**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**

| | | |
|---|---|---|
| **BRIAN THACKER and JANICE THACKER,** **Plaintiffs** | * | **CIVIL ACTION NO.** |
| **vs.** | * | |
| **THE PROCTER & GAMBLE COMPANY; THE PROCTER & GAMBLE MANUFACTURING COMPANY; PFIZER INC. And WYETH PHARMACEUTICALS, INC.;** | * | **COMPLAINT AND JURY DEMAND** |
| **Defendants.** | * | |

## COMPLAINT

Brian Thacker ("Plaintiff") and Janice Thacker ("Plaintiff-Spouse"), by and through the undersigned attorneys, hereby submits this complaint and jury demand against The Procter & Gamble Company; The Procter & Gamble Manufacturing Company; Pfizer Inc.; And Wyeth Pharmaceuticals, Inc. ("Defendants").

As more specifically set forth below, Brian Thacker maintains that Defendants' proton pump inhibitor drugs, Prilosec 20mg OTC and Protonix, are defective, dangerous to human health, unfit and unsuitable to be marketed and sold in commerce and lacked proper warning to the dangers associated with its use.

## INTRODUCTION

1. This is a personal injury action against Defendants, Procter & Gamble Co., Procter & Gamble Manufacturing Company, Pfizer Inc., Wyeth Pharmaceuticals, Inc., and their

affiliates, subsidiaries, alter-egos, and/or joint-venturers who were responsible for designing, researching, developing, testing, manufacturing, packaging, labeling, marketing, promoting, distributing, and/or selling the proton pump inhibitor ("PPI"s), specifically Prilosec 20mg OTC and Protonix.

2. PPIs are used to reduce the production of acid in order to reduce the risk of duodenal ulcer recurrence and NSAID-associated gastric ulcers as well as to treat gastroesophageal reflux disease ("GERD") and certain pathological hypersecretory conditions including Zollinger-Ellison syndrome.

**PLAINTIFF**

3. Plaintiff and Plaintiff-Spouse are natural persons, citizens, and domiciliaries of Pikeville, Kentucky located in Fayette County.

4. Plaintiff ingested PPIs as prescribed by his physician and/or directed by directions accompanying over the counter Prilosec 20mg.

5. Plaintiff first took Prilosec 20mg OTC starting in 2008 until April of 2016. Plaintiff used Protonix while hospitalized from April 22 to April 30, 2016.

6. As result of using Defendants' PPIs, Brian Thacker, was hospitalized on April 22, 2016 at Pikeville Medical Center for acute renal failure and acute interstitial nephritis for several days.

7. Brian Thacker's acute renal failure and acute interstitial nephritis was caused by taking Defendants' PPIs, as a result, he has sustained severe and permanent personal injuries, pain, suffering, and emotional distress.

## DEFENDANTS

8. Defendant The Procter & Gamble Manufacturing Company is an Ohio corporation, which has its principal place of business at 1 Procter & Gamble Plaza, Cincinnati.

9. Defendant The Procter & Gamble Company is an Ohio corporation, which has its principal place of business at 1 Procter & Gamble Plaza, Cincinnati, OH 45202.

10. On information and belief, The Procter & Gamble Company is either the direct or indirect owner of substantially all the stock or other ownership interests of Procter & Gamble Manufacturing Company.

11. In doing the acts alleged herein, The Procter & Gamble Company and The Procter & Gamble Manufacturing Company were acting in the course and scope of such agency, representation, joint venture, conspiracy, consultancy, predecessor agreement, successor agreement, service and employment, with knowledge, acquiescence, and ratification of each other (hereinafter The Procter & Gamble Company and Procter & Gamble Manufacturing Company are sometimes collectively referred to as "P&G").

12. Defendant Wyeth Pharmaceuticals, Inc. is incorporated under the laws of Delaware and has its principle lace of business in Pennsylvania.

13. Pfizer Inc. is incorporated under the laws of Delaware, and has its principle place of business in New York.

14. In 2009, Pfizer acquired Wyeth Pharmaceuticals, Inc.

15. On information and belief, Defendants have transacted and conducted business in the State of Kentucky, and/or contracted to supply goods and services within the State of Kentucky, and these causes of action have arisen from the same.

16. On information and belief, at all relevant times, Defendants expected or should have expected that their acts would have consequences within the United States of America and the State of Kentucky.

17. On information and belief, at all relevant times, Defendants derived and derive substantial revenue from PPIs used in the State of Kentucky and from interstate commerce.

18. On information and belief, at all relevant times, Defendants committed tortious acts within the State of Kentucky causing injury within the State of Kentucky, out of which act(s) these causes of action arise.

19. At all times alleged herein, Defendants shall include any and all named or unnamed parent companies, parent corporations, subsidiaries, affiliates, divisions, franchises, partners, joint venturers, and any organizational units of any kind, their predecessors, successors, successors in interest, assignees, and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

## JURISDICTION AND VENUE

20. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interests and costs, and because Defendants are all incorporated, have their principal places of business, or are otherwise at home in states other than the state in which the named Plaintiff resides.

21. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the Eastern District of Kentucky.

22. Because a substantial part of the events or omissions giving rise to the claim occurred in this District, Defendants transact a substantial amount of business in this District, or

Defendants otherwise have sufficient contacts with this District to justify it being fairly brought into this District, and Plaintiff resides in this District and was first injured in this District.

## SUMMARY OF THE CASE

23. This action is for damages brought on behalf of the Plaintiff, who was prescribed and took prescription and over the counter PPIs manufactured by Defendants. This action seeks, among other relief, general and special damages and equitable relief due to Plaintiff suffering severe and life threatening kidney injuries caused by Defendants' PPIs.

24. As a result of the defective nature of Defendants' PPIs, persons who ingested this product, have suffered and may continue to suffer from kidney injuries including acute interstitial nephritis ("AIN"), acute kidney injuries ("AKI"), chronic kidney disease ("CKD") and total renal failure, also known as end-stage renal disease ("ESRD").

25. Defendants concealed and continue to conceal their knowledge of Defendants' PPIs unreasonably dangerous risks from Plaintiff, his physicians, other consumers, and the medical community. Specifically, Defendants failed to adequately inform consumers and the prescribing medical community about the magnified risk of kidney injuries related to the use of PPIs.

26. As a result of Defendants' actions and inactions, Plaintiff was injured due to his ingestion of Defendants' PPIs, which caused and will continue to cause Plaintiff's injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

27. Prilosec 20mg OTC and Protonix are members of the proton pump inhibitor class of pharmaceuticals also known as PPIs.

28. PPIs irreversibly block the stomach's proton pump of acid producing parietal cells thereby suppressing gastrointestinal acid secretion.

29. In inhibiting the stomach's proton pump, PPIs cause inflammation of the kidneys' tubules resulting in an immunogenic injury to the kidney through haptenization, antigen mimicry, and/or neo-antigen formation.

30. The inflammation of the kidney tubules, also known as interstitial nephritis, is the cause of the vast majority of acute kidney injuries, and can lead to chronic kidney disease, the upstaging of chronic kidney disease, and end-stage renal disease requiring dialysis.

31. AstraZeneca had a patent for the drug Prilosec, which, by the year 2000, was the most widely prescribed drug in the world. Prilosec is a proton-pump-inhibitor or acid pump inhibitor that is used to treat heartburn and erosive esophagitis, erosion of the esophagus due to acid reflux. By 2000, sales of Prilosec had reached $6 billion annually, making it the top selling drug in the world in terms of sales.

32. The patent for Prilosec was set to expire in 2001, and AstraZeneca anticipated that it would face stiff competition from generic manufacturers.

33. Procter & Gamble Co., in collaboration with Procter & Gamble Manufacturing Company and AstraZeneca Pharmaceuticals LP, designed and developed the proton pump inhibitor, Prilosec OTC.

34. In January, 2000, Procter & Gamble Co. submitted its first NDA for a Prilosec OTC product, NDA # 021229, also known as omeprazole to the FDA for approval to market Prilosec OTC in the United States.

35. In June 2003 the FDA approved Prilosec OTC, NDA #021229, for healing of erosive esophagitis, maintenance of healing erosive esophagitis, and treatment of GERD.

36. Procter & Gamble Co. is the holder of approved new drug applications ("NDAs") for Prilosec OTC (20 mg; delayed-release tablets), with NDA # 021229, approved on 6/20/2003.

37. P&G markets and sells Prilosec OTC with National Drug Code numbers 37000-459.

38. Wyeth-Ayerst Laboratories Inc., in collaboration with Wyeth Pharmaceuticals, Inc. designed and developed the proton pump inhibitor, Protonix.

39. In August, 1999 Wyeth-Ayerst Laboratories submitted its first NDA for a Protonix product, NDA # 020987, also known as pantoprazole, to the FDA for approval to market Protonix in the United States.

40. Wyeth-Ayerst Laboratories is the holder of an approved new drug applications ("NDAs") for the following form of Protonix:

a. Protonix (40mg; delayed-release tablets), with NDA #020987, approved on 2/20/2000;

b. Protonix IV (40 mg; injectable IV) , with NDA # 020988, approved on 3/22/2001;

c. Protonix (40 mg; oral suspension), with NDA #022020, approved on 11/14/2007.

41. Wyeth Pharmaceuticals, Inc. entities market and sell Protonix with National Drug Code numbers 0008-0841, 0008-0923 and 0008-0844.

42. In February, 2000 the FDA approved Protonix, NDA #020987, for the healing of erosive esophagitis, maintenance of healing erosive esophagitis, and treatment of GERD.

43. Materials including advertisements, press releases, web site publications, and other communications regarding PPIs are part of the labeling of the drug, and could be altered by the respective Defendants without prior FDA approval.

44. Defendants' marketing campaigns willfully and intentionally misrepresented the risks of their respective PPIs and failed to warn about the risks of AIN, AKI, CKD, and ESRD.

45. Defendants knew or should have known of the risks of AIN, AKI and CKD, and ESRD based on the data available to them or that could have been generated by them, including, but not limited to animal studies, mechanisms of action, pharmacodynamics, pharmacokinetics, pre-clinical studies, clinical studies, animal models, genetic models, analogous compounds, analogous conditions, adverse event reports, case reports, post-marketing reports, and regulatory authority investigations.

46. There are a multitude of studies that have been published linking the danger of long term PPI use with AIN and CKD including:

a. Lazarus et al., Proton Pump Inhibitor Use and the Risk of Chronic Kidney Disease, Jama International Medicine, at http://archinte.jamanetwork.com. (2016).

b. Xie et al., Proton Pump Inhibitors and Risk of Incident CKD and Progression to ESRD, Journal of the American Society of Nephrology. (2016)

c. Klepser et al., Proton pump inhibitors and acute kidney injury: a nested case–control study, BMC Nephrology, 14:150 (2014).

d. Antoniou T, Macdonald EM, Hollands S, et al. Proton pump inhibitors and the risk of acute kidney injury in older patients: a population-based cohort study. CMAJ Open. 2015; 3:E166–E171.

e. Blank ML, Parkin L, Paul C, et al. A nationwide nested case-control study indicates an increased risk of acute interstitial nephritis with proton pump inhibitor use. Kidney Int. 2014; 86:837–844.

f. Praga M, Gonzalez E. Acute interstitial nephritis. Kidney Int. 2010; 77: 956–961.

g. Perazella MA, Markowitz GS. Drug-induced acute interstitial nephritis. Nat Rev. Nephrol. 2010; 6:461–470.

h. Harmark L, van der Wiel HE, de Groot MC, et al. Proton pump inhibitor induced acute interstitial nephritis. Br J Clin Pharmacol. 2007; 64:819–823.

i. Brewster UC, Perazella MA. Proton pump inhibitors and the kidney: critical review. Clin Nephrol. 2007; 68:65–72.

47. Despite Defendants' knowledge of the increased risk of severe injury among PPI users, Defendants did not warn patients but instead continued to defend their respective PPIs, mislead physicians and the public, and minimize unfavorable findings.

48. Consumers of Prilosec OTC and Protonix, including Plaintiff and his physicians relied on Defendants' false representations and were misled as to the drug's safety, and as a result have suffered injuries including AKI, CKD, acute kidney failure, ESRD and the life-threatening complications thereof.

49. Consumers, including Plaintiff, have several alternative safer methods for treating GERD, including home remedies and other medication, including H2 antagonists.

50. As a result of the defective nature of PPIs, persons who ingested these PPIs, including Plaintiff, have suffered and may continue to suffer from kidney injuries including AIN, AKI, CKD and ESRD.

51. Defendants concealed and continue to conceal their knowledge of PPIs unreasonably dangerous risks from Plaintiff, his physicians, other consumers, and the medical community. Specifically, Defendants failed and continue to fail to adequately inform and warn consumers and the prescribing medical community about the magnified risk of kidney injuries related to the use of their respective PPIs.

52. As a result of Defendants actions and inactions, Plaintiff was injured due to his ingestion of Prilosec OTC and Protonix, which caused and will continue to cause Plaintiff's injuries and damages. Plaintiff accordingly seeks damages associated with these injuries and sequelae.

**FACTUAL ALLEGATIONS**

53. Over 60 million Americans experience heartburn, a major symptom of GERD, at least once a month and some studies have suggested more than 15 million Americans experience heartburn on a daily basis.

54. About 21 million Americans used one or more prescription PPIs in 2009 accounting for nearly 20% of the drugs' global sales and earning an estimated $11 billion annually.

55. According to the National Health and Nutritional Examination Survey, 7.8% of US adults used prescription PPIs in every month.

56. Upon information and belief, from 2003 to the present, PPIs have been one of the top ten best-selling and most dispensed forms of prescription medication in the United States each year.

57. PPIs are one of the most commercially successful groups of medication in the United States. Upon information and belief, between the period of 2008 and 2013, prescription PPIs had a sale of over $50 billion with approximately 240 million units dispensed.

58. Defendants, directly or through their agents, apparent agents, servants, or employees designed, manufactured, marketed, advertised, distributed, promoted, and sold PPIs including Protonix and Prilosec OTC.

59. In October of 1992, three years after the FDA's initial PPI approval, researchers from the University of Arizona Health Sciences Center led by Stephen Ruffenach published the

first article associating PPI usage with kidney injuries in The American Journal of Medicine, followed by years of reports from national adverse drug registries describing this association.

60. In 2006, researchers at the Yale School of Medicine conducted a case series published in the International Society of Nephrology's Kidney International finding that PPI use, by way of AIN, left most patients "with some level of chronic kidney disease."

61. In 2007, F. Sierra et al. published an article in the Journal of Alimentary Pharmacology and Therapeutics, titled, "Systematic review: proton pump inhibitor-associated acute interstitial nephritis." The researchers concluded that long term use of proton pump inhibitors is associated with interstitial nephritis.

62. In February 2007, Harmark et al. published an article in the British Journal of Clinical Pharmacology titled "Proton pump inhibitor-induced acute interstitial nephritis." The article states:

> *Our reports show that AIN can be induced by various PPIs. This assumption is supported by data from the World Health Organization Collaborating Centre for International Drug Monitoring in Uppsala, Sweden, where PPI-induced AIN is disproportionately present in the database. The reporting odds ratios are presented in Table 2. This databank contains more than 3.7 million spontaneous reports of adverse drug reactions from more than 80 countries worldwide. About 150 of these concern PPI-induced AIN, showing that this is a relatively rare condition.*

63. On August 23, 2011, Public Citizen, a consumer advocacy group, filed a petition with the FDA to add black box warnings and other safety information concerning several risks associated with PPIs including AIN.

64. According to the petition, at the time of its filing there was "no detailed risk information on any PPI for this adverse effect."

65. On October 31, 2014, more than three years after Public Citizen's petition, the FDA responded by requiring consistent labeling regarding risk of AIN on all prescription PPIs.

66. The FDA noted "that the prescription PPI labeling should be consistent with regard to this risk" and that "there is reasonable evidence of a causal association."

67. In December of 2014, the labels of prescription PPIs were updated to read:

> *Acute interstitial nephritis has been observed in patients taking PPIs including [Brand]. Acute interstitial nephritis may occur at any point during PPI therapy and is generally attributed to an idiopathic hypersensitivity reaction. Discontinue [PPI] if acute interstitial nephritis develops.*

68. The FDA did not require the consistent labeling regarding risk of AIN on over-the-counter PPIs.

69. In January of 2016, a study published in the Journal of the American Medical Association found that PPI use was independently associated with a 20 – 50% higher risk of CKD.

70. In February of 2016, a study published in the Journal of the American Society of Nephrology found that "exposure to PPI is associated with increased risk of development of CKD, progression of kidney disease, and risk of ESRD."

71. To date, over-the-counter PPIs lack detailed risk information for AIN.

72. To date, prescription and over-the-counter PPIs lack adequate risk information for AKI.

73. To date, prescription and over-the-counter PPIs lack detailed risk information for CKD including those manufactured by Defendants.

74. Parietal cells in the stomach lining secrete gastric juices containing hydrochloric acid to catalyze the digestion of proteins.

75. Excess acid secretion results in the formation of most ulcers in the gastroesophageal system and symptoms of heartburn and acid reflux.

76. PPIs irreversibly block the acidic hydrogen/potassium ATPase enzyme system (H+/K+ ATPase) of the gastric parietal cells, thereby halting the production of most hydrochloric acid.

77. In spite of their commercial success and global popularity, up to 70% of PPIs may be used inappropriately for indications or durations that were never tested or approved.

78. As a result of the defective nature of PPIs, even if used as directed by a physician or healthcare professional, persons who ingested PPIs, including Plaintiff, have been exposed to significant risks stemming from unindicated and/or long-term usage.

79. From these findings, PPIs and/or their metabolites – substances formed via metabolism – have been found to deposit within the spaces between the tubules of the kidney and act in such a way to mediate acute interstitial nephritis ("AIN"), a sudden kidney inflammation that can result in mild to severe problems.

80. PPI-induced AIN is difficult to diagnose with less than half of patients reporting a fever and, instead, most commonly complaining of non-specific symptoms such as fatigue, nausea, and weakness.

81. AIN's slow presentation can cause significant damage over time without those affected exhibiting acute symptoms.

82. PPI use may also lead to subclinical AIN according to multiple studies including but not limited to:

a. Lazarus B, Chen Y, Wilson FP, et al. Proton pump inhibitor use and the risk of chronic kidney disease. JAMA Intern Med. 2016;176:238–246

b. Moledina DG, Perazella MA. Proton pump inhibitors and CKD. J Am Soc Nephrol. 2016; 27:2926–2928.

83. Where AIN or AKI is subclinical, it can persist for months before a patient realizes their injury. By that time, their untreated AIN or AKI can lead to CKD and ESRD.

84. PPI-induced AIN exclusively affects the kidney's interstitial tissue, rather than the kidney's glomeruli, as seen is non-PPI induced kidney injury.

85. Unlike many forms of AIN, PPI-induced AIN results in an excess of white blood cells in the urine, indicating an immunological response.

86. In April 2016, a study published in the Journal of Nephrology suggested that the development of and failure to treat AIN could lead to chronic kidney disease and end-stage renal disease, which requires dialysis or kidney transplant to manage.

87. Analyses of the study were adjusted for age, sex, race, baseline eGFR, cigarette smoking, BMI, systolic blood pressure, diabetes, a history of cardiovascular disease, antihypertensive medication use, anticoagulant medication use, statin, aspirin, NSAID use. Across all groups, "each of these sensitivity analyses showed a consisted association between PPI use and a higher risk of CKD."

88. CKD describes a slow and progressive decline in kidney function that may result in ESRD. As the kidneys lose their ability to function properly, wastes can build to high levels in the blood resulting in numerous, serious complications ranging from nerve damage and heart disease to kidney failure and death.

89. Prompt diagnosis and rapid withdrawal of the offending agent are key in order to preserve kidney function. While AIN can be treated completely, once it has progressed to CKD it is incurable and can only be managed, which, combined with the lack of numerous early-onset symptoms, highlights the need for screening of at-risk individuals.

90. PPIs have also been shown to cause CKD independent of and in the absence of an intervening AKI or AIN event, even where the AKI or AIN is subclinical.

91. Xie, Yan, et al. Long-Term Kidney Outcomes among Users of Proton Pump inhibitors without Intervening Acute Kidney Injury, shows a significant association of PPI use and CKD in the absence of AKI.

92. The results of the Xie study "showed a significant association between PPI use and chronic renal outcomes including incident CKD, CKD progression, and ESRD in the absence of intervening AKI."

93. Consumers, including the Plaintiff, who have used PPIs including Protonix and Prilosec OTC for the treatment of increased gastric acid have and had several alternative safer treatments available and have not been adequately warned about the significant risks and lack of benefits associated with Protonix and Prilosec OTC therapy.

94. Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and his physicians the true and significant risks associated with the use of Protonix and Prilosec OTC.

95. Defendants concealed and continue to conceal their knowledge that Protonix and Prilosec OTC can cause kidney injuries from Plaintiff, other consumers, and the medical community. Specifically, Defendants have failed to adequately inform consumers and the prescribing medical community against the serious risks associated with Protonix and Prilosec OTC and completely failed to warn against the risk of CKD and ESRD to this day.

96. As a result of Defendants' actions and inactions, Plaintiff was injured due to his ingestion of Protonix and Prilosec OTC, which caused and will continue to cause Plaintiff various injuries and damages. Plaintiff accordingly seeks damages associated with these injuries.

97. As a result of Defendants' actions, Plaintiff and his prescribing physicians were unaware, and could not have reasonably known or have learned through reasonable diligence,

that Plaintiff had been exposed to the risks identified in this Complaint, and that those risks were the direct and proximate result of Defendants' acts, omissions, and misrepresentations.

98. As a direct result of ingesting Protonix and Prilosec OTC, Plaintiff has been permanently and severely injured, having suffered serious consequences from Protonix and Prilosec OTC use. Plaintiff requires and will in the future require ongoing medical care and treatment.

99. Plaintiff, as a direct and proximate result of Protonix and Prilosec OTC suffered severe mental and physical pain and suffering and has and will sustain permanent injuries and emotional distress, along with economic loss due to medical expenses, and living related expenses due to his new lifestyle.

100. Plaintiff would not have used Protonix and Prilosec OTC had Defendants properly disclosed the risks associated with long-term use.

101. Defendants had an obligation to comply with the law in the manufacture, design, and sale of Protonix and Prilosec OTC.

102. Upon information and belief, Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. §301, et seq.

103. With respect to Protonix and Prilosec OTC, Defendants, upon information and belief, has or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following violations:

a. Protonix and Prilosec OTC are adulterated pursuant to 21 U.S.C. § 351 because, among other things, it fails to meet established performance standards, and/or the methods, facilities, or controls used for its manufacture, packing, storage or Installation is not in conformity with federal requirements. See, 21 U.S.C. § 351.

b. Protonix and Prilosec OTC are adulterated pursuant to 21 U.S.C. § 351 because, among other things, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for PPIs and such deviations are not plainly stated on their labels.

c. Protonix and Prilosec OTC are misbranded pursuant to 21 U.S.C. §352 because, among other things, it's labeling is false or misleading.

d. Protonix and Prilosec OTC are misbranded pursuant to 21 U.S.C. §352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e. Protonix and Prilosec OTC are misbranded pursuant to 21 U.S.C. §352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f. Protonix and Prilosec OTC are misbranded pursuant to 21 U.S.C. §352 because it's dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g. Protonix and Prilosec OTC do not contain adequate directions for use pursuant to 21 CFR § 201.5, because, among other reasons, of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in their oral, written, printed, or graphic advertising, and

conditions, purposes, or uses for which the drugs are commonly used, (b) quantity of dose, including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions, (c) frequency of administration or application, (d) duration or administration or application, and/or (d) route or method of administration or application.

h. Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i. Protonix and Prilosec OTC are misbranded pursuant to 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j. Defendants violated 21 CFR § 201.57 because they failed to identify specific tests needed for selection or monitoring of patients who took Protonix and Prilosec OTC.

q. Protonix and Prilosec OTC are mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r. Protonix and Prilosec OTC violate 21 CFR § 210.1 because the process by which it was manufactured, processed, and/or held fails to meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing, or holding of a drug to assure that it meets the requirements as to safety and have the identity and strength and meets the quality and purity characteristic that they purport or are represented to possess.

s. Protonix and Prilosec OTC violate 21 CFR § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

t. Protonix and Prilosec OTC violate 21 CFR § 211.165 because the test methods employed by Defendants are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity, and/or reproducibility of test methods have not been properly established and documented.

u. Protonix and Prilosec OTC violate 21 CFR § 211.165 in that they fail to meet established standards or specifications and any other relevant quality control criteria.

v. Defendants violate 21 CFR § 211.198 because the written procedures describing the handling of all written and oral complaints regarding Protonix and Prilosec OTC were not followed.

w. Protonix and Prilosec OTC violate 21 CFR § 310.303 in that Protonix and Prilosec OTC is not safe and effective for its intended use.

x. Defendants violated 21 CFR § 310.303 because the Defendants failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y. Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with Protonix and Prilosec OTC as soon as possible or at least within 15 days of the initial receipt by the Defendants of the adverse drugs experience.

z. Defendants violated 21 CFR §§310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with Protonix and Prilosec OTC, and evaluating the cause of the adverse event.

aa. Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences and submit follow-up reports within

the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb. Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

cc. Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to identify the reports they submitted properly, such as by labeling them as "15-day Alert report," or "15-day Alert report followup."

dd. Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of Protonix and Prilosec OTC or otherwise received by the Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that have not already been previously reported to the agency by the sponsor.

ee. Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff. Defendants violated 21 CFR § 314.80 by failing to submit a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

104. Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as the Plaintiff.

**ESTOPPEL FROM PLEADING, TOLLING OF APPLICABLE STATUTES OF LIMITATIONS AND THE DELAYED DISCOVERY RULE**

105. The running of any statute of limitation has been tolled by reason of the Defendants' conduct. The Defendants, through their affirmative misrepresentations and omissions, actively concealed from Plaintiff and Plaintiff's treating physicians the true risks associated with PPIs.

106. Plaintiff filed his claims within the applicable statute of limitations. However, to the extent Defendants assert otherwise, any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of the facts by Defendants, as alleged herein.

107. As a result of the Defendants' actions and omissions, Plaintiff and Plaintiff's treating physicians were unaware, and could not reasonably know or have learned through reasonable diligence that Plaintiff had been exposed to the risks alleged herein and that those risks were the direct and proximate result of Defendants' acts and omissions.

108. Furthermore, the Defendants are estopped from relying on any statute of limitations because of their concealment of the truth, quality and nature of PPIs. The Defendants were under a duty to disclose the true character, quality and nature of PPIs because this was non-public information that the Defendants had and continue to have exclusive control, and because the Defendants knew that this information was not available to the Plaintiff, their medical providers, and/or to their health facilities.

109. Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable drug, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on Defendants' representations.

110. Plaintiff is not an expert in the field of nephrology, epidemiology, or regulation and has never attended medical school.

111. At no point has Plaintiff ever been employed as a health care professional in any capacity, be that as a doctor, physician's assistant, registered nurse, emergency medical technician, pharmacy technician, clinical laboratory technician, nurse practitioner or veterinarian, , etc.

112. At the time of Plaintiff's injury, Plaintiff and Plaintiff's healthcare providers were not aware of any facts which would have made a reasonably prudent person suspicious of Defendants' wrongdoing because Plaintiff and Plaintiff's healthcare providers reasonably relied on Defendants' representations that PPIs do not cause kidney injury.

113. At the time of Plaintiff's injury, he diligently sought medical care at Pikeville Medical Center. At no point, however, medical providers ever indicate or suggest that PPI in any way caused, or were a substantial factor between PPIs and Plaintiff's acute renal failure.

114. To this day, Plaintiff has required frequent and regular batteries of kidney screenings to monitor his kidney function.

115. At no time prior to Plaintiffs eventual discovery of wrongdoing, did any of Plaintiff's doctors ever inform, advise, suggest or otherwise imply that Protonix and Prilosec OTC was a potential contributing cause of Plaintiff's acute interstitial nephritis and acute renail failure.

116. Plaintiff reasonably relied on the skill and judgment of Plaintiff's doctors and had no reason to further investigate, inquire into or suspect Protonix and Prilosec OTC caused Plaintiff's condition.

117. Plaintiff exercised reasonable diligence in an attempt to discover the cause of his kidney injury. Plaintiff relied on his physicians to advise him of any known complications. Plaintiff had no reason to believe his injuries were the result of any wrongdoing, whether intentional and/or negligent, until the discovery dates suggested below and is therefore relying on the benefit of the discovery rule.

118. The Plaintiff had neither knowledge nor reason to suspect that the Defendants were engaged in the wrongdoing alleged herein. Because of the fraudulent acts of concealment of wrongdoing by the Defendants, the Plaintiff could not have reasonably discovered the wrongdoing at the time of his injury.

119. The Defendants had the ability to and did spend enormous amounts of money in furtherance of their purpose of marketing and promoting a profitable pharmaceutical drug, notwithstanding the known or reasonably known risks. Plaintiff and medical professionals could not have afforded and could not have possibly conducted studies to determine the nature, extent and identity of related health risks, and were forced to rely on only the Defendants' representations.

120. Because of Defendants' refusal to conduct appropriate studies to determine the safety of continuous PPI use on users' kidneys, and because of their failure to apprise physicians of information they held secretive within their companies, Plaintiff was deprived of evidence of a causal connection between his injuries and Defendants' PPIs and Defendants' negligent acts and omissions.

121. At the time of Plaintiff's injury, Plaintiff did not have access to, or actually receive any studies or information recognizing the increased risk of kidney injuries with Proton Pump Inhibitor use or have any discussions with his Doctor that there was an association between his acute interstitial nephritis and PPI use.

122. Plaintiff was not aware of the connection between the use of Protonix and Prilosec OTC and kidney injuries until July of 2016, when Plaintiff saw a television commercial identifying the link between Proton pump inhibitors (including Protonix and Prilosec OTC prescribed and taken over the counter by Plaintiff) and kidney disease.

123. At the time of Plaintiff's injuries and in the exercise of reasonable diligence, Plaintiff could not have discovered that acute interstitial nephritis or acute renal failure was caused by PPIs. At the time of his injury, Plaintiff did not have the means, knowledge, experience, or access necessary to infer that PPIs were the proximate cause of his kidney injuries.

124. Plaintiff could not have made an earlier discovery despite his reasonable diligence because of the knowing and active concealment and denial of the facts by Defendants, as alleged herein. Plaintiff and his healthcare providers were deprived of vital information essential to the pursuit of these claims, through no fault or lack of diligence on their part. Plaintiff could not reasonably have discovered the dangerous nature of, and the unreasonable adverse side effects associated with continuous PPI use.

125. Plaintiff's statute of limitations is further tolled as a result of Defendants' intentional and deliberate efforts to withhold from the FDA, healthcare community, Plaintiff's physicians and Plaintiff the known or knowable cause and/or potential association between Defendants' Protonix and Prilosec OTC and the risk of developing kidney injuries including AKI, AIN, CKD, and ESRD. Defendants are and were under a continuing duty to disclose the

true character, quality and nature of its products to patients and healthcare providers. Because of Defendants' concealment of the true character, quality and nature of Protonix and Prilosec OTC, Defendants are estopped from relying on any statute of limitations defense.

## COUNT I
## NEGLIGENCE

126. The paragraphs above are incorporated by reference hereto as if set forth at length.

127. The Plaintiff pleads this Count in the broadest sense available under law to include pleading same pursuant to all substantive law that applies to this case as may be determined by choice of law principles, regardless of whether arising under statute and/or common law.

128. Defendants owed a duty to manufacture, compound, label, market, distribute, and supply and/or sell Protonix and Prilosec OTC in such a way as to avoid harm to persons upon whom they are used, such as Plaintiff or to refrain from such activities following knowledge and/or constructive knowledge that such product is harmful to persons upon whom it is used.

129. Defendants owed a duty to warn of the hazards and dangers associated with the use of Protonix and Prilosec OTC for patients such as, Plaintiff, herein, so as to avoid harm.

130. Defendants, acting by and through their authorized divisions, subsidiaries, agents, servants, and employees, were guilty of carelessness, recklessness, negligence, gross negligence and willful, wanton, outrageous and reckless disregard for human life and safety in manufacturing, designing, labeling, marketing, distributing, supplying, selling and/or placing into the stream of commerce Protonix and Prilosec OTC, including in the following particular respects:

a. failing to conduct adequate and appropriate testing of Protonix and Prilosec OTC.

b. putting Protonix and Prilosec OTC on the market without first conducting adequate testing to determine possible side effects;

c. putting Protonix and Prilosec OTC on the market without adequate testing their dangers to humans;

d. failing to recognize the significance of their own and other testing of, and information regarding Protonix and Prilosec OTC, which testing evidenced such PPIs are potentially harmful to humans;

e. failing to respond promptly and appropriately to their own and other testing of, and information regarding Protonix and Prilosec OTC, which indicated such PPIs are potentially harmful to human;

f. failing to promptly and adequately warn of the potential of Protonix and Prilosec OTC to be harmful to humans;

g. failing to promptly and adequately warn of the potential for kidney injuries including acute interstitial nephritis, acute kidney injuries, and chronic kidney disease when using Protonix and Prilosec OTC;

h. failing to promptly, adequately, and appropriately recommend testing and monitoring of patients upon whom Protonix and Prilosec OTC was used in light of such PPIs potential harm to humans;

i. failing to properly, appropriately, and adequately monitor the post-market performance of Protonix and Prilosec OTC effects on patients;

j. concealing from the FDA, National Institutes of Health, the general medical community and/or physicians, their full knowledge and experience regarding the potential that Protonix and Prilosec OTC is harmful to humans;

k. promoting, marketing, advertising and/or selling Protonix and Prilosec OTC for use on patients given their knowledge and experience of such PPIs' potential harmful effects;

l. failing to withdraw Protonix and Prilosec OTC from the market, restrict their use and/or warn of the potential dangers of Protonix and Prilosec OTC, given their knowledge of the potential for its harm to humans;

m. failing to fulfill the standard of care required of a reasonable, prudent, PPIs manufacturer engaged in the manufacture of PPIs;

n. placing and/or permitting the placement of Protonix and Prilosec OTC into the stream of commerce without warnings of the potential for said PPI to be harmful to humans and/or without properly warning of said PPI's dangerousness;

o. failing to disclose to the medical community in an appropriate and timely manner, facts relative to the potential of Protonix and Prilosec OTC to be harmful to humans;

p. failing to respond or react promptly and appropriately to reports of PPIs causing harm to patients;

q. disregarding the safety of users and consumers of Protonix and Prilosec OTC, including Plaintiff, under the circumstances by failing adequately to warn of said PPI's potential harm to humans;

r. disregarding the safety of users and consumers of Protonix and Prilosec OTC, including Plaintiff, and/or his physicians' and/or hospital, under the circumstances by failing to withdraw said PPI from the market and/or restrict its usage;

s. disregarding publicity, government and/or industry studies, information, documentation and recommendations, consumer complaints and reports and/or other information regarding the hazards of Protonix and Prilosec OTC and its potential harm to humans;

t. failing to exercise reasonable care in informing physicians and/or hospitals using Protonix and Prilosec OTC about their own knowledge regarding said PPI's potential harm to humans;

u. failing to remove Protonix and Prilosec OTC from the stream of commerce;

v. failing to test Protonix and Prilosec OTC properly and/or adequately so as to determine their safety for use;

w. promoting Protonix and Prilosec OTC on websites aimed at creating user and consumer demand;

y. failing to conduct and/or respond to post-marketing surveillance of complications and injuries;

z. failing to use due care under the circumstances; and,

aa. such other acts or omissions constituting negligence and carelessness as may appear during the course of discovery or at the trial of this matter.

131. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendants are liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

132. As a direct and proximate result of Defendants' negligent acts and omissions, Plaintiff, suffered kidney injuries.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

**COUNT II**
**STRICT PRODUCTS LIABILITY**

133. The paragraphs above are incorporated by reference hereto as if set forth at length.

134. Defendants manufactured, designed, packaged, labeled, produced, created, assembled, distributed and sold Protonix and Prilosec OTC and in the course of same, directly advertised or marketed the product to consumers including Plaintiff Brian Thacker, and therefore had a duty to warn of the risks associated with the use of the Protonix and Prilosec OTC, pursuant to the Kentucky Product Liability Act, KRS § 411.300, et. seq.

135. Defendants knew or should have known that Protonix and Prilosec OTC posed a risk of severe kindey injuries when used in its normal intended manner, and that this risk could not be eliminated. Defendants furthermore mislead users, including Plaintiff, by the use of packaging, advertisements, and labeling that Protonix and Prilosec OTC cannot cause AIN, AKI, CKD, or ESRD.

136. Protonix and Prilosec OTC's inadequate warnings rendered it unreasonably dangerous and defective because its packaging failed to adequately warn Plaintiff of, among other things, the increased risk of severe kidney injuries.

137. Defendants' defective warnings for Protonix and Prilosec OTC was reckless, willful, wanton, fraudulent, malicious, and done with reckless disregard for the health and safety of users of Protonix and Prilosec OTC. Defendants made conscious decisions not to adequately warn about risks they know or should have known about. Defendants' reckless conduct warrants an award of punitive damages. Defendants' conduct was motivated by greed and the intentional

decision to value profits over the safety and well-being of the consumers of Protonix and Prilosec OTC.

138. Brian Thacker was prescribed and used PPIs in a reasonable foreseeable manner for their intended purposes and for purposes that Defendants expected and could foresee.

139. Defendants expected and intended Protonix and Prilosec OTC to reach Brian Thacker and did in fact reach Brian Thacker, without any substantial change in the condition of the product from when it was initially manufactured by Defendants.

140. Plaintiff could not have discovered the unwarned risks of using PPIs through the exercise of reasonable care.

141. Defendants, as manufacturers of pharmaceutical drugs, are held to the level of knowledge of an expert in the field, and further, Defendants knew or should have known that the warnings and other relevant information and data which they distributed regarding the risks of injuries and death associated with the use of Protonix and Prilosec OTC were incomplete and inadequate.

142. Brian Thacker did not have the same knowledge as Defendants and no adequate warning or other clinically relevant information and data was communicated to or to his treating physicians. The warnings that were given by Defendants were not accurate and were incomplete.

143. Defendants had a duty to properly test, develop, design, manufacture, inspect, package, label, market, promote, sell, distribute, supply, warn, and take other such steps as necessary to ensure that PPIs manufactured or distributed by them did not cause users to suffer from unreasonable and dangerous risks.

144. Defendants knew or should have known that the limited warnings disseminated with Protonix and Prilosec OTC were inadequate, but they failed to communicate adequate

information on the dangers and safe use of its product, taking into account the characteristics of and the ordinary knowledge common to physicians or who would be expected to prescribe the drug. In particular, Defendants failed to communicate warnings and instructions to doctors that were appropriate and adequate to render the product safe for its ordinary, intended, and reasonably foreseeable uses, including the common, foreseeable, and intended use of the product for treatment of GERD.

145. Defendants knew, or should have known, of the defective nature of the Protonix and Prilosec OTC it continued to manufacture, design, package, assemble, distribute and sell without providing adequate warnings and instructions concerning the use of the product so as to maximize sales and profits at the expense of the public health and safety, in knowing, conscious, and deliberate disregard of the foreseeable harm caused by Protonix and Prilosec OTC.

146. As a direct and proximate cause of Defendants manufacture, sale and promotion of the defectively designed drug and failure to warn Plaintiff and his physicians about the significant risks inherent in Protonix and Prilosec OTC therapy, Brian Thacker sustained severe injuries.

147. As a result of the unreasonably dangerous and defective condition of Protonix and Prilosec OTC, which Defendants manufactured, designed, labeled, marketed, distributed, supplied, sold and/or placed into the stream of commerce, they are strictly liable to the Plaintiff for his injuries that they directly and proximately caused, based on the following:

a. failing to provide adequate warnings with their proton pump inhibitor ; and

b. failing to properly and adequately design their product.

148. Because of Defendants' failures, Plaintiff used the Protonix and Prilosec OTC, which the Defendants manufactured, designed, sold, supplied, marketed or otherwise introduced into the stream of commerce.

149. For all of the reasons alleged herein, Protonix and Prilosec OTC were unreasonably dangerous because an adequate warning about the product had not been provided and at the time the product left the manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide adequate warnings that such characteristic and its dangers to users of the product.

150. Further, Defendants, before, during, and after Protonix and Prilosec OTC left their control, acquired knowledge of the characteristic of the product that may cause damage and the danger of such characteristic (or, alternatively, Defendants would have acquired such knowledge if it had acted as reasonable prudent manufacturers), and thus are liable for damages suffered by Plaintiff which arose as a consequence of Defendants' failure to use reasonable care to provide an adequate warning of such characteristic and its dangers to users.

151. As a direct and proximate result of Defendants' Protonix and Prilosec OTC, Plaintiff, suffered kidney injuries.

152. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendant is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY

153. The paragraphs above are incorporated by reference hereto as if set forth at length.

154. In the advertising and marketing of Protonix and Prilosec OTC, Defendants warranted that Protonix and Prilosec OTC were safe for regular use, which had the natural tendency to induce physicians and hospitals to use Protonix and Prilosec OTC for patients and for patients to want to be treated with Protonix and Prilosec OTC.

155. Defendants expressly warranted to Plaintiff's physicians and Plaintiff by and through statements made by Defendants or their authorized agents or sales representatives, orally and in publications, package inserts, marketing, and other written materials intended for physicians and the public that Protonix and Prilosec OTC were safe, effective, fit and proper for its intended use, of merchantable quality, had been adequately tested, contained adequate warnings, and was effective.

156. Protonix and Prilosec OTC's "Warnings and Precautions" section prescribing information purports to expressly describe the relevant and material side-effects that Defendants knew or should have known about which did not include adequate warnings for acute kidney failure.

157. Plaintiff consumed that drug reasonably relying on these warranties. Brian Thacker and his physician could not have learned independently that Defendants' representations, labels, warnings, direct to consumer marketing, express and implied warranties were false and misleading. The aforesaid warranties were breached by Defendants and constituted a serious danger to the user.

158. Defendants knew or should have known Plaintiff would rely on their warranties.

159. Plaintiff reasonably relied on the skill, judgment, representations, and foregoing express warranties of Defendants.

160. The warranties and representations were false. Protonix and Prilosec OTC can cause AIN, AKI, acute kidney failure, CKD, and ESRD.

161. None of the Protonix and Prilosec OTC consumed by Plaintiff conformed to Defendants' express representations; therefore, Defendants have breached their express warranties.

162. The breach of express warranties by Defendants was a foreseeable, direct, and proximate cause of' injuries and damages.

163. As a direct and proximate result of Defendants' breach of warranty as described herein, Plaintiff, suffered the injuries and damages as set forth above.

164. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendant is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

**COUNT IV**
**BREACH OF IMPLIED WARRANTY**

165. The paragraphs above are incorporated by reference hereto as if set forth at length.

166. At all relevant and material times, Defendants manufactured, distributed, advertised, promoted, and sold Protonix and Prilosec OTC which blocks the production of stomach acid in order to reduce the risk of duodenal ulcer recurrence and NSAID-associated gastric ulcers as well as to treat gastroesophageal reflux disease ("GERD") and certain pathological hypersecretory conditions including Zollinger-Ellison syndrome.

167. At all relevant times, Defendants intended that Protonix and Prilosec OTC be used in the manner that the Plaintiff used it and Defendants impliedly warranted the product to be of merchantable quality, safe and fit for such use, and was adequately tested.

168. Defendants breached various implied warranties with respect to Protonix and Prilosec OTC, including:

a. Defendants represented through their labeling, advertising, marketing materials, detail persons, seminar presentations, publications, notice letters, and regulatory submissions that the Protonix and Prilosec OTC were safe, and withheld and concealed information about the substantial risks of serious injury associated with long term use of Protonix and Prilosec OTC;

b. Defendants represented that Protonix and Prilosec OTC were safe to use every day;

169. In reliance upon Defendants' implied warranty, Plaintiff, used Protonix and Prilosec OTC and in the foreseeable manner promoted, instructed, and marketed by Defendants.

170. Defendants breached their implied warranty to, Plaintiff, in that Protonix and Prilosec OTC are not of merchantable quality, safe and fit for their intended use, or adequately tested.

171. In using Protonix and Prilosec OTC, Plaintiff and his physicians relied on the skill, judgment, representations, and foregoing express warranties of Defendants. These warranties and representations proved to be false because the product was not safe and was unfit for the uses for which it was intended.

172. As a direct and proximate result of Defendants' breach of warranty as described herein, Plaintiff, suffered the injuries and damages as set forth above.

173. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendant is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

**COUNT V**
**FRAUDULENT MISREPRESENTATION AND OMISSION**

174. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further allege as follows.

175. Defendants, having undertaken design, formulation, testing, manufacture, marketing, sale, and distribution of Protonix and Prilosec OTC owed a duty to provide accurate and complete information regarding said drug.

176. Defendants fraudulently misrepresented that the daily use of Protonix and Prilosec OTC was safe and effective.

177. Defendants had a duty to provide consumers with true and accurate information regarding the Protonix and Prilosec OTC manufactured, marketed, distributed and sold.

178. Defendants made representations and failed to disclose material facts with the intent to induce consumers, including Plaintiff, and the medical community to act in reliance by purchasing and using Protonix and Prilosec OTC sold by Defendants.

179. Plaintiff, and the medical community justifiably relied on Defendants' representations and omissions by purchasing and taking Protonix and Prilosec OTC.

180. As a direct and proximate result of Defendants' representations and omissions as described herein, Plaintiff, suffered the injuries and damages as set forth above.

181. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendant is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

WHEREFORE, Plaintiff demands judgment against Defendants for actual and compensatory damages; for punitive or exemplary damages; for costs herein incurred; and for such other and further relief as this Court deems just and proper.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

182. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

183. Defendants made misrepresentations to Plaintiff's physicians, Plaintiff, and the general public from the time Protonix and Prilosec OTC were first tested until now. The misrepresentation includes but is not limited to the misrepresentation that Protonix and Prilosec OTC are safe, fit, and effective for human consumption.

184. Defendants owed a duty to Plaintiff to exercise reasonable care and ensure they did not misrepresent the safety or efficacy of Protonix and Prilosec OTC.

185. Defendants failed to exercise that reasonable care and have therefore breached their duty to Plaintiff.

186. Defendants had a duty to correct these material misstatements because they knew or should have known thee statements were false and others would reasonable rely on them and suffer injury.

187. These misrepresentations were made directly by the Defendants, by agents of the Defendants, and in written material directed to physicians, medical patients, and the public, with the intention of inducing reliance and the prescription, purchase, and use of the subject product.

188. Defendants violated the common law in addition to the Kentucky Products Liability Act, Ky. Rev. Stat. Ann. § 411.300 et seq.

189. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS 411.310 is inapplicable; and that Defendants is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

190. The representations by the Defendants were in fact false, in that Protonix and Prilosec OTC are not safe, fit, and effective for human consumption, using Protonix and Prilosec OTC is hazardous to health, and Protonix and Prilosec OTC have a serious propensity to cause serious kidney injuries to users, including but not limited to the injuries suffered by plaintiff.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands that the issues herein contained be tried by a jury.

## COUNT VII
## FRAUDULENT CONCEALMENT

191. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

192. The respective Defendants knew that Protonix and Prilosec OTC are defective, unreasonably unsafe, and that its risks were understated.

193. Defendants willfully intentionally and fraudulently concealed their knowledge of this from Plaintiff's physicians, Plaintiff, and the general public.

194. Defendants withheld information that they had a duty to disclose through Protonix and Prilosec OTC's labeling, advertising, marketing materials, seminal presentations, publications, notice letters, and regulatory submissions that Protonix and Prilosec OTC were safe and effective.

195. Defendants withheld information about the severity of the substantial risks of using Protonix and Prilosec OTC and their knowledge of the safety signals regarding adverse effects of Protonix and Prilosec OTC.

196. Defendants withheld information that Protonix and Prilosec OTC was not safer or more effective than alternative medications or treatments available on the market.

197. The above facts were material would have been considered important to a reasonable person.

198. Had the above facts been disclosed, Plaintiff would not have taken Protonix or Prilosec OTC and Plaintiff's physicians would not have prescribed it.

199. Defendants had a duty to disclose this information Plaintiff's physicians and Plaintiff.

200. Defendants knew or should have known and intended that Plaintiff's physicians and Plaintiff would rely on the inaccurate information they provided.

201. Defendants violated the common law in addition to the Kentucky Products Liability Act, Ky. Rev. Stat. Ann. § 411.300 et seq.

202. Additionally, to the extent any claims are made under the laws of the State of Kentucky and to the extent this Court finds that Kentucky statutory law found at KRS 411.300 to 411.350 is applicable to this case, Plaintiff asserts and alleges that the presumption found at KRS

411.310 is inapplicable; and that Defendant is liable under KRS 411.320 and there is no applicable defense found at KRS 411.320.

203. Defendants' fraudulent concealment of the truth is a direct and proximate cause of Plaintiff's injuries and damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands that the issues herein contained be tried by a jury.

## COUNT VIII
## KENTUCKY CONSUMER PROTECTION ACT

204. Plaintiff realleges and reincorporates each of the allegations above as if set forth fully herein.

205. Defendants are liable to the Plaintiff pursuant to the Kentucky Consumer Protection Act (hereinafter "KCPA").

206. Defendants were in the business of manufacturing and marketing Protonix and Prilosec OTC. Defendants and/or their agents designed, formulated, manufactured, assembled, prepared for sale, distributed, and/or sold the defective drug to Plaintiff which was in a defective condition unreasonably dangerous when applied to its intended use in the usual and customary manner.

207. Plaintiff Brian Thacker, while using Protonix and Prilosec OTC in the usual and customary manner as it was intended to be used, suffered substantial injuries as a proximate result of Defendants placing the product on the market, which was unreasonably dangerous and defective at the time it was placed on the market by Defendants.

208. As a direct and proximate result of Defendants' conduct, Plaintiff was injured and are entitled to recover damages for his severe kidney injury including acute interstitial nephritis,

physical and mental pain, past and future medical expenses, past and future pain and suffering, and permanent injury.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands that the issues herein contained be tried by a jury.

## COUNT IX
## LOSS OF CONSORTIUM

209. Plaintiffs incorporate by reference each proceeding and succeeding paragraph as though set forth fully at length herein.

210. Plaintiff- Spouse is the wife of Brian Thacker, and was his lawful wife on all material and relevant dates to this complaint.

211. As a direct and proximate result of the negligence and other acts omissions of Defendants, described within the previous Counts of this Complaint, Plaintiff – Spouse has suffered a loss of consortium, society, affections and services of her husband, Brian Thacker, as well as other economic damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor for compensatory and punitive damages, together with interest, costs herein incurred, attorneys' fees, and all such other and further relief as this Court deems just and proper. Plaintiff also demands that the issues herein contained be tried by a jury.

## PUNITIVE DAMAGES ALLEGATIONS

212. The acts, conduct, and omissions of Defendants, as alleged throughout this Complaint were willful and malicious. Defendants committed these acts with a conscious disregard for the rights, health and safety of Brian Thacker and other Protonix and Prilosec OTC users and for the primary purpose of increasing Defendants' profits from the sale and distribution

of Protonix and Prilosec OTC. Defendants' outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendants in an amount appropriate to punish and make an example of Defendants.

213. Prior to the manufacturing, sale, and distribution of Protonix and Prilosec OTC, Defendants knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendants, through their officers, directors, managers, and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including and as such, Defendants unreasonably subjected consumers of said drugs to risk of injury or kidney failure from using Protonix and Prilosec OTC.

214. Despite their knowledge, Defendants, acting through its officers, directors and managing agents for the purpose of enhancing Defendants' profits, knowingly and deliberately failed to remedy the known defects in Protonix and Prilosec OTC and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in Protonix and Prilosec OTC. Defendants and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Protonix and Prilosec OTC knowing these actions would expose persons to serious danger in order to advance Defendants' pecuniary interest and monetary profits.

215. Defendants' conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendants with willful and conscious disregard for the safety of, entitling Plaintiff to exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiff and Plaintiff-Spouse pray the Court for judgment against Defendants in an amount to be determined at trial, as appropriate for:

a. compensatory, restitution and general damages in an amount that is fair and reasonable and just;

b. punitive damages, against Defendants as appropriate, in the amount set forth above;

c. reasonable and/or statutory attorneys' fees under state laws;

d. costs of suit;

e. prejudgment and post judgment interest thereon at 8% or other appropriate rate as provided for by statute; and

f. such other and further relief as the Court deems just, appropriate and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff and Plaintiff-Spouse, hereby demand a trial by jury on all claims so triable.

Date: April 24, 2017

RESPECTFULLY SUBMITTED:

**SCHACHTER HENDY JOHNSON PSC**

/s/ Ronald E. Johnson, Jr.
Ronald E. Johnson, Jr.
*Attorney for Plaintiff*
909 Wrights Summit Parkway
Suite 210
Fort Wright, KY 41017
859-578-4444
rjohnson@pschachter.com